**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMIE RAYE BARNHILL,**

   **Plaintiff,**

**vs.**          **Case No. 4:18cv564-MW/CAS**

**MARK S. INCH,**

   **Defendant.**

_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff is a Florida prisoner proceeding pro se and in forma pauperis in this civil rights action.  Plaintiff filed a first amended complaint (hereinafter "complaint"), in late January 2019, ECF No. 6, and a motion for a preliminary injunction, ECF No. 11, in late April 2019.  An Order was entered directing service of process on May 13, 2019, and Defendant was required to file a response to the complaint as well as Plaintiff's motion for a preliminary injunction.  *See* ECF No. 13.

Defendant requested, ECF No. 21, and was granted, a 14-day extension of time in which to file responses.  ECF No. 22.  On the deadline

provided, Defendant filed an answer, ECF No. 23, to the amended complaint, but requested another extension of time in which to respond to the motion for preliminary injunction due to "delays in receiving the additional very recent medical documents and in obtaining a declaration as to the Plaintiff's treatment . . . ."  ECF No. 24.  That motion was granted and Defendant was directed to file a response to Plaintiff's motion by Monday, August 19, 2019.  ECF No. 25.

On August 16, 2019, Defendant filed a third motion requesting an extension of time in which to respond to Plaintiff's motion for preliminary injunction.  ECF No. 26.  Defendant ultimately filed a response on August 23, 2019.  ECF No. 27.  That response includes exhibits concerning Plaintiff's medical and psychological status and history.  The documents should have been submitted under seal to protect Plaintiff's privacy in those records.  This Order seals the exhibits.  Plaintiff's motion for a preliminary injunction, ECF No. 11, is ready for a ruling.

**The Amended Complaint, ECF No. 6**

Plaintiff[1] is a "transwoman," meaning she was born with male genitalia but identifies as female, and is "serving a 72-month sentence for a SONORA violation."  ECF No. 6 at 4.  Plaintiff suffers from Gender Dysphoria and "believes she is a woman trapped in a mans [sic] body."  *Id.* at 4-5.[2]  Plaintiff has lived "her life as a woman" for over 30 years.  *Id.* at 6. Now in the custody of the Florida Department of Corrections, Plaintiff alleges that her Eighth and Fourteenth Amendment rights have been violated by the failure to provide medically necessary surgery and by discriminating against her in areas such as clothing, cosmetic, and hygiene.  ECF No. 6.  The amended complaint (hereinafter "complaint") seeks declaratory and injunctive relief only.  *Id.* at 10.

Attached to the complaint is a copy of an informal grievance Plaintiff submitted to the medical department requesting that inmates diagnosed with gender dysphoria be given a razor to shave "excess body hair."  ECF

_____

[1] Plaintiff entered Department of Corrections' custody on October 26, 2017, and is tentatively scheduled to be released in the summer of 2023.  ECF No. 27-2 at 2 (Defendant's Ex. B at 2).  The first time a citation is made to one of Defendant's exhibits it will include both the exhibit reference and the page on the Court's electronic docket as Plaintiff does not have access to CMECF.

[2] The Court will refer to Plaintiff using feminine pronouns.

Case No. 4:18cv564-MW/CAS

No. 6 at 25.  The grievance was denied because a razor "is a security concern not [a] medical or mental health" issue.  *Id.*

Plaintiff then submitted a grievance to the warden of Zephyrhills Correctional Institution dated April 17, 2018.  ECF No. 6 at 24.  Plaintiff grieved the fact that the Gender Dysphoria Review Team had not provided adequate medical care or treatment.  *Id.*  Plaintiff complained that gender dysphoric inmates were denied "a daily means of hair removal to present as females."  *Id.*  Plaintiff said that the denial of adequate hair removal causes "a sense of depression so severe" that she wants "to crawl in a hold and just end it."  *Id.*

That grievance was also denied, but the response noted that based on Plaintiff's "statement of daily homicidal and suicidal thoughts, [she was] given a mental health review."  *Id.* at 23.  The response further declared that Plaintiff was being provided all "current approved property and accommodations . . . ."  *Id.*

Plaintiff then filed an appeal to the Secretary's Office on May 7, 2018.  ECF No. 6 at 22.  Plaintiff requested laser hair removal or some means of hair removal and a second opinion from an outside mental health provider who had experience treating transgender persons.  *Id.*  Alternatively,

Plaintiff sought permission "to use a disposable razor at medical in the inmate infirmary bathroom to shave daily and body shave at least once a week." *Id.* No copy of a response to that appeal was presented with the complaint, so it is unknown if a response was provided to Plaintiff.

Also attached to the complaint are copies of Plaintiff's grievances concerning the issue of hair length. On August 12, 2018, Plaintiff sent a grievance to the warden of Santa Rosa Correctional Institution Annex, ECF No. 6 at 15, grieving the fact that she was not permitted "to follow the same grooming standards for hair length" which were permissible for female inmates. Plaintiff said she had to keep her "hair cut short in a military male fashion" which caused "extreme depression, anxiety, and mental anguish." *Id.* Plaintiff requested a "medical pass to be exempt from hair cuts" and be allowed "to follow female grooming standards for hair length." *Id.*

Plaintiff's grievance was denied on August 24, 2018, and Plaintiff was advised that her grievance was not of a medical nature because "medical does not issue passes for the grooming issues" presented in the grievance. ECF No. 6 at 16. Plaintiff was directed to address her "concerns with classification." *Id.*

Plaintiff appealed that response to the Secretary's Office on August 29, 2018.  ECF No. 6 at 14.  She explained her diagnosis of gender dysphoria and pointed out a recent federal court order which required the Department to allow inmate Keohane to comply with female grooming standards for hair length because of a GD diagnosis.  *Id.*  Plaintiff complained that it was "mentally traumatizing to make [her] endure being shaved bald on the whim of a correctional officer because" of her female appearance.  *Id.*  Plaintiff said that female inmates were permitted to "grow out their hair" and she requested equal treatment.  *Id.*

Plaintiff's appeal was denied on November 21, 2018.  ECF No. 6 at 13.  The response said that it was "the responsibility of [Plaintiff's] health care staff to determine the appropriate treatment regimen for" her "condition."  *Id.*  The response noted that Plaintiff had been "approved for hormone therapy" but the other issues had not been approved by the Gender Dysphoria Review Team.  *Id.*  Plaintiff was told she could "ask the therapist for another evaluation" regarding her Gender Dysphoria."  *Id.*

Additionally, Plaintiff submitted another grievance to the Secretary's Office in mid-October 2018, seeking to prevent officials from shaving her "bald headed" and causing her "traumatic emotional shock, depression and

a great deal of anxiety." ECF No. 6 at 18. Plaintiff argued that female inmates were not subjected to forced haircuts[3] and neither was inmate Keohane after an injunction was issued by District Court Judge Mark Walker. *Id.* Plaintiff requested "equal treatment" and to be "allowed to grow his/her hair in compliance with female grooming standards in conjunction with the WPATH standards of care." *Id.*

Plaintiff's appeal was denied on November 14, 2018. *Id.* at 17. The appeal "advised" that Plaintiff was "approved for hormone therapy" but the Gender Dysphoria Review team did not approve any other requests. *Id.*

Plaintiff initiated this action on December 7, 2018, ECF No. 1, and filed the motion for preliminary injunction on April 22, 2019. ECF No. 11.

**Motion for Preliminary Injunction, ECF No. 11**

Plaintiff seeks injunctive relief in two specific ways: (1) to prohibit prison officials from forcibly shaving Plaintiff bald and permit her to grow her hair using the same standards applicable to female prisoners; and (2)

---

[3] Department rules permit the use of force to shave an inmate. Rule 33-602.101(5) states that prison officials may "direct staff to shave the inmate, cut the inmate's hair, or take other necessary action to bring the inmate into compliance with the grooming standards after all efforts to verbally persuade the inmate to comply have failed and . . . [t]he inmate has been found to be in violation of Department grooming standards through the formal disciplinary process (rules 33-601.301-.314, F.A.C.)." FLA. ADMIN. CODE R. 33-602.101(5)(a).

provide Plaintiff with "some means of hair removal that will lessen the intense suicidal ideation of being forced to be a bearded woman." ECF No. 11 at 1, 2. Plaintiff states that she "has lived all of her adult life as a female while in society." *Id.* at 1. She requests "to be treated with the same dignity as female inmates." *Id.* She argues that forcibly shaving her "bald, out of spite or ignorance[,] serves no penalogical [sic] purpose other than to cause the Plaintiff to suffer from Acute Depression, anxiety and a sense of intense personal violation, as well as to suffer suicidal ideation." *Id.* at 1-2. Plaintiff points out that her grievances were denied and prison officials have refused to provide an acceptable means of hair removal, *id.* at 2, but she argues that in light of the court order entered in the Keohane case, she is entitled to relief. *Id.* at 3.

**Defendant's Response, ECF No. 27**

Defendant first requests that Plaintiff's motion be denied because Plaintiff did not meet the burden of establishing all required elements for issuance of a preliminary injunction. ECF No. 27 at 3. Second, Defendant contends that the motion should be denied because Plaintiff's requests are moot. *Id.* at 4.

Specifically, Defendant states that as of July 30, 2019,[4] Plaintiff has been given approval to style her hair in accordance with female hair standards.  ECF No. 27 at 4 (citing to exhibits C-D).  Further, Defendant advises that Plaintiff has "been given access to an additional canteen list which includes access to purchasing items such as combs, ponytail holders, hair nets, shampoo, conditioner, hair rollers, hair claws, and hair clips to accommodate the practical management of longer hair."  *Id.* at 4-5 (citing to Ex. E at 1-2).  Defendant advises that Plaintiff's accommodation has been given as part of "an ongoing treatment plan" which receives periodic updates and was not "implemented as a result of this action being filed."  ECF No. 27 at 5; *see also* p. 7.  Defendant contends that Plaintiff has also already "been provided the means to remove her facial hair" pursuant to the Department's rules.  ECF No. 27 at 7.  Defendant contends that Plaintiff has substantial access to barber services because her job assignment at Dade Correctional Institution since April 11, 2019, is in the

---

[4] Defendant's response states that Plaintiff was approved for longer hair on June 30, 2019.  ECF No. 27 at 4.  However, the medical record cited in support of that statement reveals the Gender Dysphoria Review Team made that decision on July 30, 2019.  ECF No. 27-4 at 1 (Ex. D).

institution's barbershop.  *Id.* at 8.  Additionally, Plaintiff may purchase items from the canteen to possess and use while housed in open population.  *Id.*

Thus, Defendant argues that Plaintiff's motion is moot because she has been granted the relief requested.  Defendant asserts that this Court should have no concerns "that the challenged actions might be reasonably expected to recur" or that Plaintiff's treatment was "an attempt to manipulate jurisdiction."  *Id.* at 5-7.

**Standard of Review**

Granting or denying a preliminary injunction is a decision within the discretion of the district court.  Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citing United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)).  Preliminary injunctive relief may be granted only if the moving party establishes:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury unless the injunction issues;

(3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause the opposing party; and

(4) granting the injunction would not be adverse to the public interest.

Keeton v. Anderson–Wiley, 664 F.3d 865, 868 (11th Cir. 2011); Carillon

Importers, Ltd., 112 F.3d at 1126; United States v. Jefferson Cnty., 720

F.2d 1511, 1519 (11th Cir. 1983).  To be entitled to a preliminary injunction,

a plaintiff must demonstrate all four prerequisites.  Siegel v. LePore, 234

F.3d 1163, 1176 (11th Cir. 2000); Jefferson Cnty., 720 F.2d at 1519 (citing

Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)).

**Mootness**

Although Defendant argues that Plaintiff's motion is moot because

she has now been afforded the relief sought, there are serious concerns

about that argument.  "Defendant 'bears the formidable burden of showing

that it is absolutely clear the allegedly wrongful behavior could not

reasonably be expected to recur.'"  Doe v. Wooten, 747 F.3d 1317, 1322

(11th Cir. 2014) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

(TOC), Inc., 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000))

(quoted in Keohane v. Jones, 328 F. Supp. 3d 1288, 1298 (N.D. Fla. 2018)

(holding that the denial of hormone treatment for Florida prisoner

diagnosed with gender dysphoria was deliberate indifference)).  A

government actor is entitled to a "rebuttable presumption" that the unlawful

activity will not resume "only after it has shown unambiguous termination of

the complained of activity."  Keohane, 328 F. Supp. 3d at 1298 (citing to

Wooten, 747 F.3d at 1322).  In this case, and as explained more fully

below, it does not appear that Defendant has unambiguously terminated

the conduct about which Plaintiff complains.  Furthermore, although

Defendant contends that Plaintiff is now receiving appropriate treatment for

gender dysphoria, it is not clear that this treatment will continue past this

litigation without entry of an injunction.

**First Element**

First, Plaintiff faces a substantial likelihood of success on the merits.

"It is well settled that the 'deliberate indifference to serious medical needs

of prisoners constitutes the 'unnecessary and wanton infliction of pain,'

proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97,

104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoted in McElligott v. Foley,

182 F.3d 1248, 1254 (11th Cir. 1999)).  "A core principle of Eighth

Amendment jurisprudence in the area of medical care is that prison officials

with knowledge of the need for care may not, by failing to provide care,

delaying care, or providing grossly inadequate care, cause a prisoner to

needlessly suffer the pain resulting from his or her illness."  McElligott, 182

F.3d at 1257.  Gender dysphoria is a serious medical need and, thus,

requires appropriate treatment.  Keohane, 328 F. Supp. 3d 1293-94.

Pursuant to the WPATH[5] Standards, "social transitioning" is a reasonable

and beneficial option in treating gender dysphoria which would include

'wearing women's undergarments and grooming like a woman."  328 F.

Supp. 3d at 1295 (noting that self-expression is "severely limited" for

inmates and citing to expert testimony that "providing hormone therapy

while denying the ability to socially transition is not only 'medically and

logically inconsistent,' but also 'potentially harmful'").  The evidence in

Keohane sufficiently established that "the failure to treat an inmate's

gender dysphoria would cause the inmate to suffer."  328 F. Supp. 3d at

1313.

Here, Plaintiff's sworn complaint provides evidence that Plaintiff was

diagnosed with gender dysphoria and was suffering with "severe mental

anguish and the ability to function normally without treatment . . . ."  ECF

_____

[5] The World Professional Association for Transgender Health (WPATH) is "an international, multidisciplinary, professional association whose mission is to promote evidence-based care, education, research, advocacy, public policy, and respect in transsexual and transgender health."  Keohane, 328 F. Supp. 3d at 1294.  "WPATH has published standards of care ('WPATH Standards') for treating gender" which are "intended for worldwide use . . . and are recognized by the American Medical Association, American Psychiatric Association, American Psychological Association, and the American College of Obstetricians and Gynecologists."  328 F. Supp. 3d at 1294 (finding "the WPATH Standards authoritative in the treatment of gender dysphoria").

No. 6 at 5-6.  Plaintiff alleged that despite the "significant distress" and impairment she experienced in social functioning, she was given only hormone therapy and counseling.  Plaintiff's treatment request (to be allowed to follow female grooming standards) was denied.  *Id.* at 6-7. Plaintiff's request to grow her hair longer was also denied, even though an injunction had already been issued in Keohane to prevent prison officials from shaving the plaintiff's head.  *Id.* at 7; *see also* ECF No. 6 at 17-18.[6] Indeed, Plaintiff's requests to grow her hair long and comply with female grooming standards were denied multiple times by the Gender Dysphoria Review Team and in responding to her grievances.  Those denials were made *after* the decision in Keohane.

Defendant's evidence establishes that between February and March of 2018, Plaintiff was given a psychological evaluation for "Transgender/ Gender Dysphoria."  ECF No. 27-2 (Ex. B).  Several recommendations were made for Plaintiff, but Plaintiff was not permitted to wear female undergarments, be provided female amenities, and the like.  *Id.* at 16.  The

---

[6] Plaintiff's grievance to the Secretary was dated October 12, 2018, and was denied by the Secretary's Office on November 14, 2018.  Judgment was entered in Keohane on August 22, 2018.  Keohane v. Jones, 328 F. Supp. 3d 1288 (N.D. Fla. 2018).

psychological evaluation referred Plaintiff's requests[7] to the Gender

Dysphoria Review Team.  *Id.*

Two months later, in May 2018, the Gender Dysphoria Review Team

submitted a treatment disposition, *see* ECF No. 27 at 1, which failed to

grant Plaintiff any change concerning the hair length rule.  ECF No. 27-3 at

1 (Ex. C).  The Team also did not approve Plaintiff for wearing female

undergarments, having transgender canteen items, sexual reassignment

surgery, or referral to psychiatry.  *Id.*  She was, however, given a medical

pass for pat search and showers, hormonal therapy, and mental health

treatment.  *Id.*

Another psychological evaluation was performed in November 2018

while Plaintiff was housed at Jefferson Correctional Institution to address

Plaintiff's dissatisfaction with the Team's recommendations.  ECF No. 27-2

at 19 (Ex. B).  Plaintiff stated that it was "humiliating having a bald head"

and reported that she had been living as a woman her "whole life" and

"always had longer hair."  *Id.*  She also "envisioned the privilege of

---

[7] Exhibit B reveals that Plaintiff had requested, among other things, permission to "wear typically female undergarments, specifically bras and panties;" to continue with hormone therapy; to be considered sexual reassignment surgery; to be "housed at a female correctional facility and/or be provided the same amenities as women in female institutions."  ECF No. 27-2 at 16 (Ex. B).

borrowing a razor to shave once per week in a private Medical area under light supervision." *Id.* at 20. Plaintiff explained that she was receiving therapy, but expressed that she "would not need mental health services at all if she was provided . . . accommodations." *Id.* She stated that she was "continuing to experience symptoms of depression related to stigmatization and inability to present as a female" at Jefferson C.I. *Id.* Plaintiff related experiencing disrespect from staff and inmates, a lack of social support, and feeling "targeted" when using the restroom or shower. *Id.* at 19. Plaintiff expressed fear that she "might end up killing" herself if things did not improve. *Id.*

Following the November 2018 evaluation, the Gender Dysphoria Review Team amended its recommendation to permit Plaintiff to have female undergarments and transgender canteen items. ECF No. 27-3 at 3 (Ex. C). That recommendation (made in December 2018) did not approve Plaintiff to grow her hair longer in accordance with female regulations. *Id.* at 3-4. Instead, the Team stated that Plaintiff could "grow hair longer, but must be in compliance with rule (off collar & ears)." *Id.* at 3. Judicial notice

is taken that the referenced rule concerns male inmate hair length, not the rule applicable for female inmates.[8]

Notably, a specific recommendation was also not made as to "razor privileges" even though the November 2018 psychological evaluation had recommended that the Team focus on that issue as "may be appropriate." ECF No. 27-3 at 4; *Cf. ECF* No. 27-2 at 20.  Plaintiff was to continue with therapy and "necessary medical services and hormone treatment," but no recommendation was made specifically addressing hair length.  *Id.*  Thus, the Team did not permit Plaintiff to grow her hair in compliance with female regulations.  ECF No. 27-3 at 3-4 (Ex. C).

Seemingly out of nowhere, and not prompted by an updated mental health report or psychological evaluation, the Gender Dyspheria Review Team [GDRT] entered an amended disposition form.[9]  ECF No. 27-4 (Ex. D).  This change was made on July 30, 2019, after Plaintiff was transferred

---

[8] Rule 33-602.101 provides that "[m]ale inmates shall have their hair cut short to medium uniform length at all times with no part of the ear or collar covered."  FLA. ADMIN. CODE R. 33-602.101(4).

[9] At least Defendant presented no evidence to show that such a report or evaluation prompted a new GDRT disposition.

to Dade Correctional Institution,[10] and Plaintiff was permitted to style her hair "in accordance with the female hair standards as stated in [Rule] 33-602.101." *Id.*

Defendant contends that the "update to the disposition . . . was the latest culmination of an on-going treatment plan which has received periodic review and update beginning with the first disposition issued in May of 2018." ECF No. 27 at 5. However, there has been no demonstration of "periodic" reviews. Accepting Defendant's statement that the GDRT's initial review was made in May (the form was not dated), *see* ECF No. 27-3 at 1-2, the evidence indicates that a second review was made in December 2018 *only* because Plaintiff "consistently expressed dissatisfaction with the GDRT recommendations." *See* ECF No. 27-2 at 19. Because of Plaintiff's dissatisfaction, the "Office of Health Services (OHS) requested a brief follow-up evaluation to address" Plaintiff's gender dysphoria and treatment. *Id.* There is otherwise no documentary evidence to show that the GDRT makes "periodic" reviews, nor has Defendant cited

---

[10] Plaintiff was transferred to Dade Correctional Institution on either March 12, 2019, *see* ECF No. 27-7 at 1 (Ex. G), or March 20, 2019, *see* ECF No. 27-9 at 1 (Ex. I).

to any evaluations or mental health reports which provide a basis for the updated recommendation.

There is no evidence to show *why* the change was made to permit Plaintiff to wear her hair in accordance with female standards in July 2019. The timing is questionable because it was not made at the same time as Plaintiff's transfer to Dade Correctional Institution.  It might be expected that a new recommendation would be entered if Plaintiff was evaluated by a new medical team, or if she had experienced changes.  Yet, there is no indication why the change was made on July 30, 2019, considering that Plaintiff arrived at that institution in March 2019.  The lack of any supporting documentation raises concerns that a medical need did not prompt the change but, instead, it was brought about by this litigation.  Notably, the abrupt change in the GDRT's decision was made 3 days prior to Defendant's filing of the answer, ECF No. 23, in this case, and simultaneously filing a second motion requesting an extension of time in which to respond to Plaintiff's motion, ECF No. 24.

What is evident from reviewing the monthly reports between December 7, 2018, and July 24, 2019, is that Plaintiff was reporting suicidal thoughts because "they [had] not given" her razors to shave.  *See* ECF No.

27-8 at 5-20 (Ex. H).  Plaintiff said she suicidal thoughts "all day everyday because they don't give me tools for grooming myself (shaving)."  *Id.* at 8.  However, there is no comment in either the assessment or plan sections of the forms which reveals any suggestion, recommendation, or hint of the need to make changes to Plaintiff's treatment, or the GDRT's recommendation made seven months earlier.  Defendant has failed "to provide any explanation for the swift course correction" in allowing Plaintiff to comply with female grooming policies.  Keohane, 328 F. Supp. 3d at 1299.

It is also questionable whether Plaintiff's relief can be expected to last because the Defendant filed an appeal in Keohane.  That appeal is pending at the present time, but judicial notice is taken of the Secretary's argument on appeal that the plaintiff's "requests to wear female underwear and makeup and to grow long hair violate FDC policies."  Appellee's brief at 21, case # 18-14096.  Defendant argues several times that "permitting plaintiff to grow longer hair or wear female clothing within the male prison facility" is not medically necessary to treat plaintiff's gender dysphoria.  *Id.* at 21-22, 24.  Accordingly, Defendant has continued the argument made during the trial in Keohane that making an exception or change to the

Department's "hair-length policy for an inmate with gender dysphoria . . . would be a 'hard sell' . . . based on a finding of medical necessity."  328 F. Supp. 3d at 1307.  Thus, it cannot be accepted that Defendant's change is likely to last.  *See* Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 532 (11th Cir. 2013) (noting that "Florida 'continue[s] to press on appeal that the voluntarily ceased conduct should be declared constitutional").  In that light, Defendant has not shown that the change in the GDRT's recommendations is a "'consistently applied' ... new policy," nor does the appeal suggest that Defendant will "adhere[ ] to a new course of conduct."  Doe v. Wooten, 747 F.3d 1317, 1323 (11th Cir. 2014).

Defendant has also not demonstrated through record evidence that the change in conduct was "the result of substantial deliberation" rather than "simply an attempt to manipulate jurisdiction."  Doe, 747 F.3d at 1323. There has been no documentation presented to justify or support the change in treatment provided and, moreover, Defendant continues to argue in this case that Plaintiff's treatment "does not rise to the level of deliberate indifference to her serious medical need."  ECF No. 27 at 13-14. Thus, because it appears that relief has been provided to Plaintiff on a whim, it may also be revoked on a whim.  It is concluded that the recent change

made on July 30, 2019, which permitted Plaintiff to grow her hair longer did

not moot her request for injunctive relief.  *See* <u>Keohane</u>, 328 F. Supp. 3d at

1298-1300 (finding that "Defendant's voluntary cessation of the challenged

conduct" did not moot the plaintiff's claims).  Defendant has not met the

"formidable" burden of showing that the wrongful behavior would not return

if this litigation was terminated and, thus, notwithstanding the holding in

<u>Keohane</u> and the resulting order for injunctive relief,[11] the undersigned

concludes that Plaintiff has a substantial likelihood of success on the merits

and the motion is not moot.

That conclusion remains as to Plaintiff's second request for relief as

well - to provide Plaintiff with a sensible means of hair removal to lessen

"the intense suicidal ideation of being forced to be a bearded woman."

ECF No. 11 at 2.  The evidence reveals that Plaintiff not only desires to

shave her face more frequently to not have a beard, but to shave other

areas as well.  *See* ECF No. 27-2 at 20 (Ex. B).[12]

---

[11] The Court enjoined the Defendant Secretary of the Florida Department of Corrections "to permit Ms. Keohane access to the same undergarments, hair-length policy, and makeup items available for inmates housed in Defendant's female facilities so that she can socially transition to treat her gender dysphoria."  <u>Keohane</u>, 328 F. Supp. 3d at 1318.

[12] Plaintiff said in her second psychological evaluation that she wanted to be able to "shave once per week in a private Medical area under light supervision."  ECF No. 27-2

Defendant contends that Plaintiff's request for treatment has already been accommodated because Plaintiff has access to purchase items in the canteen such as "a personal electric razor, and/or Magic Razorless Shave Cream."  ECF No. 27 at 8.  Defendant also argues that Plaintiff can also purchase "a set of tweezer for the purposes of hair removal."  *Id.*; *see also* at 9.  The Court rejects any suggestion that a biological male who is receiving hormone therapy should use tweezers to remove the hair from one's chest, armpits, legs, or other areas as cruel and unusual punishment.[13]  Furthermore, although Defendant asserts that Plaintiff can purchase such items in the canteen, Plaintiff's financial affidavit which was submitted in this case to support granting her in forma pauperis status reveals that Plaintiff has had zero funds in her prison account.  It is not clear that Plaintiff has the financial means to make such a purchase and there is no indication on this record that such items are provided to indigent inmates when deemed medically necessary.  Instead, the evidence reveals

---

at 20.  "She stated this would make her feel more like a woman because 'Women don't have hairy titties.  It gives me chills thinking about the hair I have on my body.'" *Id.*

[13] Plaintiff seeks the same ability given to female prisoners who "are afforded disposable razors to maintain their personal hygiene i.e. shaving their legs, armpits, arm, and facial hair . . . ." ECF No. 11 at 2.  Plaintiff argued that "[a]ll male to female prisoners diagnosed with gender dysphoria and on female hormones should be provided an adequate means of hair removal to prevent suicidal ideation."  *Id.* at 11.

that as of July 24, 2019, Plaintiff reported having suicidal thoughts because "they [had] not given" her razors to shave.  *See* ECF No. 27-8 at 5-20 (Ex. H).

Additionally, Defendant states that Plaintiff has misunderstood the rules concerning access to hair removal products and shaving.  ECF No. 27 at 7.  Plaintiff alleged she could only shave "three times per week" under the relevant rule, but Defendant states that is a "minimum."  *Id.*

Rule 33-602.101 provides that "male inmates who desire to remain clean shaven shall be clipper shaved three times per week, and those inmates who desire to grow a half-inch beard shall have their beards trimmed three times per week with a clipper fitted with a half-inch guard." Fed. R. Civ. P. 33-602.101(4).  That Rule also permits female inmates to "possess one (1) disposable state-issued razor."  *Id.*  However, Defendant asserts that the Rule's "statement referring to three times a week is provided as a minimum which is adhered to for inmates who are housed in special housing such as confinement, where inmates are dependent upon staff to make this service available to them a minimum of three times per week."  ECF No. 27 at 2.  Defendant also presented an affidavit which declares that inmates in general population such as the Plaintiff, "can

access barber services more frequently than the required three times per week." ECF No. 27-9 at 2 (Ex. I).  Furthermore, because Plaintiff works in the barbershop,[14] Plaintiff has even "more access to barbering services than other non-barber inmates housed in general population."  *Id.*

It is accepted as true that Plaintiff has daily access to the inmate barbershop.  However, it is inconceivable that working in that public location provides Plaintiff with the practical opportunity to shave any area other than her face.  Her job assignment does not enable Plaintiff to shave all of the same areas on the body that females may shave.  That is why Plaintiff requested permission to go "in a private Medical area under light supervision" to shave once per week if she could not be provided a razor to use in her cell.

Plaintiff is presumed to have the ability and access to shave her face more often than three times a week, at least as long as Plaintiff is permitted to work in the inmate barbershop.  However, such a job assignment is not a constitutional right, but a privilege.  Job assignments are subject to change

---

[14] Defendant's evidence reveals that Plaintiff has been assigned to work as a barber in the inmate barbershop at Dade Correctional Institution since April 11, 2019.  ECF No. 27-9 at 1 (Ex. I).  Plaintiff's is assigned to work there in both the morning and afternoon shifts and barbershops are open daily.  *Id.* at 1-2.

and Plaintiff has no guarantee that she will continue to enjoy such access. Moreover, that access does not address Plaintiff's other issues in hair removal.

Considering that Plaintiff's reviewing psychologist recommended that the GDRT focus on providing Plaintiff "items available at female institutions (e.g., under-garments, canteen items, [and] razor privileges)," it does not appear that Plaintiff is seeking to obtain her own preference in treatment. ECF No. 27-2 at 20 (Ex. B). Rather, Plaintiff is seeking to receive that which her doctor believes is necessary "to help her outwardly express her gender" which could benefit her "psychological and emotional functioning." *Id.* Denying a prisoner a necessary medical treatment for a serious medical need constitutes deliberate indifference. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott, 182 F.3d at 1255. There was considerable delay in allowing Plaintiff to grow out her hair which is unexplained. There has been

Case No. 4:18cv564-MW/CAS

considerable delay in providing Plaintiff with access to hair removal and, even at this point, it is unclear whether Plaintiff can do so. Plaintiff faces a substantial likelihood of success on the merits as to this issue and this second aspect of Plaintiff's motion for preliminary injunction is not moot.

**Second Element**

As for the second element necessary to be entitled to an injunction, Plaintiff indicates that she faces a substantial threat of irreparable injury due to suicide. ECF No. 11 at 12. Plaintiff points out that the longer a person diagnosed with gender dysphoria remains untreated, "the more significant the risk" of harm becomes. *Id.* Plaintiff states that she "has already suffered serious distress and has strongly indicated that lack of treatment will eventually lead to suicide." *Id.*

Defendant's evidence reveals that Plaintiff has a history of suicide attempts and numerous psychiatric hospitalizations. ECF No. 27-2 at 8. However, Defendant has also sought to convey that Plaintiff is not currently a risk for suicide but has made "self-reports regarding suicidal ideation" to manipulate the process to obtain grooming items. *See* ECF No. 27-8 (Ex.

H).[15]  Defendant points out that between November 2017 and December 2018, Plaintiff was "interviewed and/or evaluated regarding her mental health on at least thirty-one occasions."  *Id.* at 2.  Plaintiff "denied having any suicidal ideation on all but three occasions, and denied having any plan or intent to harm herself at every instance . . . ."  *Id.*  Similarly, during the period of time between December 2018 and July 24, 2019, Plaintiff "denied suicidal ideation in all but two evaluations which occurred on June 26, 2019 and July 24, 2019."  *Id.* at 2-3.  Defendant notes that the therapist made no changes to the severity level of Plaintiff's symptoms, nor changes to the treatment plan.  *Id.* at 3.  The inference Defendant suggests should be made is that Plaintiff's "level of suicidal risk did not reach a level of significance warranting a change in treatment."  *Id.*

In Keohane, the plaintiff's treatment team testified that the failure to provide social transitioning treatment for one diagnosed with gender dysphoria "can lead to self-harm and suicide."  328 F. Supp. 3d at 1309; *see also* at 1311 (noting doctor's awareness "that untreated gender

---

[15] On April 20, 2018, Plaintiff had "an emergency mental health evaluation" after staff received a grievance from Plaintiff "that alluded to suicidal and homicidal ideations." ECF No. 27-8 at 2.  When asked about the statement, Plaintiff said, "I don't feel that way but I wanted to try and show them that this is how serious it can get."  *Id.*; *see* ECF No. 27-8 at 48 (Ex. H).

dysphoria may lead to suicide and self-castration").  Plaintiff's sworn complaint states that Plaintiff suffers from "deep anxiety and distress" which includes "suicidal ideation and suicide attempts."  *Id.* at 7-8.  Plaintiff stated that she "has refrained from such drastic measures at this time, choosing to believe in the integrity of this Court to protect her Civil Rights." *Id.* at 8.

In light of Plaintiff's history, however, the risk of suicide should neither be ignored nor downplayed.  "[P]sychological stress which could lead to suicide" has been held to constitute "irreparable injury."  <u>Tugg v. Towey</u>, 864 F. Supp. 1201, 1209 (S.D. Fla. 1994).  The Department of Corrections' website includes mortality data which reveals that between 13 and 22 inmate deaths due to suicide have occurred every year between 2014 and 2019.[16]  At Dade Correctional Institution where Plaintiff is currently housed, three suicides occurred there in 2018.[17]  The risk of suicide is present and has increased for Plaintiff recently.  The evidence reveals that in Plaintiff's last two mental health evaluations from June-July 2019, Plaintiff reported

---

[16] http://www.dc.state.fl.us/pub/mortality/index.html

[17] The Department's website indicates that 2 of the reported 3 suicide deaths are still "open" investigations with the Florida Department of Law Enforcement (FDLE).  *See* http://www.dc.state.fl.us/pub/mortality/463.html

having suicidal thoughts, although staff concluded that Plaintiff did not pose

an imminent threat.  *See* ECF No. 27-8 at 4-8.  In prior sessions this year,

Plaintiff did not report those thoughts.  Accordingly, the evidence reveals

that this risk has increased and is sufficient to constitute irreparable injury.[18]

Before leaving this issue, one argument Defendant raised should be

addressed.  Defendant points out that Plaintiff has attempted to show

irreparable injury due to suicidal ideation, but contends that the relief

requested in this case is to provide Plaintiff with "a disposable razor to

remove her facial and body hair," which Defendant contends "would create

a great degree of potential harm to Defendant in the form of liability."  ECF

No. 27 at 19-20.  Thus, Defendant points to a seemingly inconsistent

argument - that Plaintiff wants access to a razor which would then enable

Plaintiff to commit suicide.  First, suicide is not always committed through

use of a razor.[19]  Second, providing Plaintiff with a disposable razor is not

---

[18] Death is an  irreparable injury because it is irreversible.  Ferguson v. Warden, Fla. State Prison, 493 F. App'x 22, 26 (11th Cir. 2012) (denying stay of execution) (citing In re Holladay, 331 F.3d 1169, 1177 (11th Cir. 2003) ("We consider the irreparability of the injury that petitioner will suffer in the absence of a stay to be self-evident."); Woodson v. North Carolina, 428 U.S. 280, 303-04, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944 (1976) (recognizing that "death is a punishment different from all other sanctions in kind rather than degree.").

[19] An affidavit submitted by Defendant states that Plaintiff has access to "Magic razorless shave cream via the canteen."  ECF No. 27-7 at 2 (Ex. G).

the only possible remedy to granting Plaintiff's request to have the means to remove hair from undesired places while allowing it to grow longer in desired places.  Third, it is disingenuous for Defendant to refuse to provide Plaintiff with a razor while assigning Plaintiff to work in the barbershop.

**Third Element**

To meet the third required element, Plaintiff must show that the threatened injury to her outweighs whatever harm the proposed injunction would cause the Defendant.  Plaintiff has argued that prison officials will suffer much less harm in "providing necessary medical care to Plaintiff consistent with their constitutional obligations."  ECF No. 11 at 14.  Moreover, Plaintiff notes that the government cannot suffer harm in being required to comply with the Constitution.  *Id.* at 15.

Defendant addresses this issue only be asserting that if the injunction were granted, Defendant would face "a great degree of potential harm . . . in the form of liability."  ECF No. 27 at 19.  However, as noted above, providing Plaintiff with a razor is not the only means of granting Plaintiff relief.  Plaintiff may be afforded a means for hair removal which does not include providing her with a disposable razor.  Defendant may select whatever means is appropriate considering the security of the institution,

Plaintiff's security, and other such considerations.  However, Plaintiff is entitled to injunctive relief.

**Fourth Element**

Although Defendant did not address this fourth element, the Court concludes that granting the injunction would not be adverse to the public interest.  The "public is undoubtedly interested in seeing that inmates' constitutional rights are upheld."  Hoffer v. Inch, 382 F. Supp. 3d 1288, 1315 (N.D. Fla. 2019) (citation omitted).  An inmate should not be denied appropriate and necessary medical care due to prejudice, inconvenience, ignorance, administrative red tape, a lack of compassion, or blindly pointing to outdated policies.  Plaintiff has already suffered during the prolonged denial of care, even after issuance of a similar injunction in Keohane v. Jones, 328 F. Supp. 3d 1288 (N.D. Fla. 2018).  Defendant has not sufficiently explained the recent reversal in Plaintiff's care.  Without issuance of an injunction in this case, it is unlikely that medically necessary treatment will continue to be provided to Plaintiff.  Defendant must provide Plaintiff Jamie Raye Barnhill with the ability to socially transition, "a form of medically necessary care to treat her gender dysphoria."  Plaintiff must be permitted to grow her hair in accordance with the Department's hair length

policy for female inmates, and Plaintiff must be provided with some means to remove unwanted hair.

Accordingly, it is

**ORDERED** that the Clerk of Court shall **SEAL** the exhibits to Defendants response to Plaintiff's motion for preliminary injunction, ECF No. 27.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that Plaintiff's motion for a preliminary injunction, ECF No. 11, be **GRANTED**, and the Defendant be enjoined from shaving Plaintiff's head and be required to provide Plaintiff with a means to remove unwanted hair, and to permit Plaintiff to grow her hair in accordance with the Department of Corrections' rules for female inmates.  Further, it is **RECOMMENDED** that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on September 23, 2019.


 S/     Charles A. Stampelos            
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 4:18cv564-MW/CAS

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**