## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JAMIE RAYE BARNHILL,**

      **Plaintiff,**

**vs.**                     **Case No.: 4:18-cv-564-MW/MAF**

**MARK S. INCH,**
**SEC'Y, FLORIDA DEP'T OF CORR.,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Jamie Raye Barnhill, an inmate proceeding *pro se*, initiated this civil rights action and was granted leave to proceed *in forma pauperis*. ECF No. 4. The amended complaint, ECF No. 6, was served upon the Defendant. ECF No. 14. This Cause is currently before the Court upon Defendant's Motion for Summary Judgment, ECF No. 49.

After careful review, for the reasons stated below, Defendant's Motion for Summary Judgment should be granted and the case be dismissed. Yet, before addressing Plaintiff's claims, a brief discussion of Plaintiff's litigation history is warranted.

## I.   Plaintiff's Related Litigation History

Plaintiff is a "transwoman" who has been seeking sexual reassignment surgery (SRS) since 1986.[1] ECF No. 6, p. 5. Plaintiff has challenged the Florida Department of Corrections' (FDC) courses of treatment for her gender dysphoria[2] (GD) since 2003. The instant case is Plaintiff's third attempt in federal court to seek the treatment she prefers.

In 2003, Plaintiff filed a complaint in the Northern District of Florida raising similar issues against the Defendant (Secretary of FDC)[3] and others in Case No. 5:03-cv-00296-MP-EMT. There, she alleged that the defendants refused to provide her with hormone therapy in order to treat her GD. The Court dismissed the case for failure to state a claim because Plaintiff was receiving medical treatment in the form of mental health counseling. Ultimately, the dispute was over the adequacy of the treatment and a

---

[1] Plaintiff states she was born male but "believes she is a woman trapped in a man[']s body." ECF No. 6, p. 5. Although the FDC Offender Network identifies Plaintiff as a male inmate, because Plaintiff identifies as a female and uses the "she" pronoun in her pleadings, this Report reflects the same. See http://www.dc.state.fl.us/offendersearch/ (last visited August 28, 2020).

[2] Courts have also used the term "transsexualism" and "gender identity disorder" (GID) interchangeably with gender dysphoria to describe the same condition. In Plaintiff's earlier cases, the district courts for the Middle District of Florida and the Northern District of Florida used the term "gender identity disorder." Barnhill v. Cherry, Case No. 8:06-cv-922-T-23TGW, 2008 U.S. Dist. LEXIS 117483 (M.D. Fla. 2008); see also N.D. Fla. Case No. 5:03-cv-296-MMP-MD using the term "transsexualism" and "gender identity disorder."

[3] At the time, James V. Crosby was the acting Secretary of the FDC. Presently, Mark S. Inch is the Secretary.

difference of opinion over matters of medical judgment. Case No. 5:03-cv-00296-MP-EMT, ECF No. 17. Plaintiff appealed to the Eleventh Circuit Court of Appeals in Case No. 04-15044H, which was eventually dismissed for failure to prosecute. Id., ECF No. 38.

A few years later, in 2006, Plaintiff filed a similar suit in the Middle District of Florida in Case No. 8:06-cv-00922-SDM-TGW. There, she sued prison doctors and attempted to relitigate the hormone therapy claim and added some of the same issues she alleges in the instant case, namely, that she be granted permission to use cosmetics, grow her hair, and be permitted to follow the same grooming standards for female inmates. Defendants moved for summary judgment for failure to state a claim and raised, *inter alia*, collateral estoppel as a defense. M.D. Fla. Case No. 8:06-cv-00922-SDM-TGW, ECF No. 29, 43. However, while Plaintiff's claims seeking hormone therapy were barred by collateral estoppel and failed to establish deliberate indifference to a serious medical need (again, a difference in medical opinion), the court dismissed the claims related to grooming standards for failure to exhaust administrative remedies. Id., ECF No. 56. Again, Plaintiff appealed in Case No. 08-11904F. The appeal was found to be frivolous. Id., ECF No. 64.

It is well settled that plaintiffs may not seek relief on an issue previously litigated and resolved on the merits. The Supreme Court of the United States has repeatedly held:

> Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

Allen v. McCurry, 449 U.S. 90, 94 (1980). To the extent Plaintiff's complaint could be construed as containing a claim that the hormone treatment she currently receives is insufficient to treat her gender dysphoria, Plaintiff is barred by collateral estoppel, as determined in M.D. Fla. Case No. 8:06-cv-00922-SDM-TGW. She may not relitigate the same issue resolved by the Middle District of Florida. Therefore, the Court considers Plaintiff's complaint as limited to her request for an injunctive order directing Defendant to order a comprehensive evaluation for SRS by a medical specialist, to provide her with SRS, to place her in an institution "designated as a Gender Dysphoric site," and to reimburse Plaintiff's court costs.

## II.  Allegations of Plaintiff's Amended Complaint, ECF No. 6

Plaintiff names just one defendant in this civil rights action though she repeatedly refers to "defendants" in her amended complaint. Plaintiff is

currently serving a 72-month sentence for a "SONORA (sic) violation."[4] Id. Essentially, Plaintiff has two claims. First, Defendant is deliberately indifferent to her gender dysphoria, in violation of the Eighth Amendment's ban on cruel and unusual punishment. Id., p. 8. Second, Defendant has discriminated against her as a "transwoman," in violation of the Fourteenth Amendment, by refusing her access to the same clothing, cosmetics, and hygiene items approved and available to female inmates. Id., p. 9.

Plaintiff claims that Defendant violated her Eighth Amendment right to receive "ADEQUATE medically necessary treatment." Id., p. 5. She admits that she received "some treatment" in the form of hormone replacement therapy and mental health care but claims she is entitled to "the treatment that would be provided within the community by medical practitioners who are qualified to treat such specialized medical disorders such as [GD]." Id.

According to Plaintiff, the Gender Dysphoria Review Team (GDRT) was assigned to determine treatment recommendations for her. Id., p. 6. Plaintiff admits that during her incarceration she has been permitted to live openly as a female. Id. However, she continues to suffer "extreme mental anguish" and claims the "only way" to treat her condition is through SRS. Id.

---

[4] "SONRA" is the Sex Offender Registration and Notification Act.

(emphasis added) In support, Plaintiff claims that SRS "is a medically necessary treatment because it is supported by leading medical research and standards of care" including the state's Medicaid program and the federal Medicare program. Id. In describing the distress created by GD, she explains her history of attempting suicide during high school. Id. Plaintiff makes no claim in her amended complaint that she attempted suicide recently or that she is currently suicidal.[5] Id.

Plaintiff claims she submitted grievances seeking SRS but was informed that the "facility does not do sex reassignment surgery," that she was not yet "seen by an approved DOC Health Service Provider," and, first, she needed to "see an endocrinologist to be referred for this surgery." Id., p. 7. Plaintiff claims that the prison has failed to prescribe SRS, which fails to follow the medical standards established by WPATH[6] or their own policies. Id. Plaintiff claims the prison policy is "a blanket ban" on SRS. Id.

---

[5] Nonetheless, the record contradicts any assumption otherwise. From November 2017 through the initiation of the instant case, Plaintiff denied suicidal ideation more than thirty times during mental health evaluations and made three admissions in March and May 2018. ECF No. 27-8, pp. 21-82. She denied having any plan or intent to self-harm. Id., pp. 41, 43, 59; ECF No. 27-2, pp. 9, 11.

[6] According to its website, The World Professional Association for Transgender Health (WPATH) is a non-profit, interdisciplinary, professional and educational organization devoted to transgender health. https://www.wpath.org/about/mission-and-vision. (last visited August 20, 2020).

Plaintiff claims that prison officials denied her requests to follow the same grooming standards as female inmates, including growing out her hair and denying her the ability to shave or permanently remove her "excessive body and facial hair." Id., pp. 7, 9; see also Plaintiff's exhibits at pp. 13-20. Plaintiff claims she was denied female undergarments and was not permitted to use cosmetics. Id. Still, she admits the prison conceded in giving her a medical pass for two bras, but this is less than the amount permitted for female inmates. Id. Plaintiff claims the refusal to allow her to follow female grooming standards is discriminatory and fails to comport with prison policy and Chapter 33.601.101 of the Florida Administrative Code. Id., pp. 7, 9.

According to Plaintiff, this creates "intense anxiety, depression, and suicidal ideation" and "mental anguish," and requires mental health treatment but, ultimately, counseling cannot resolve her GD. Id., p. 7. Plaintiff alleges the FDC's policy banning SRS is not based on "sound medical judgment." Id., p. 8.

Plaintiff seeks an injunction directing Defendant to provide her with treatment that follows WPATH's standard of care, including:

1. a comprehensive evaluation for SRS by a medical specialist;

2. the means for hair removal (disposable razors, laser hair removal);

3. permission to follow female inmate grooming standards;

4. placement in an institution "designated as a Gender Dysphoric site": and

5. reimbursement of court costs incurred in pursuing this matter.

Id., p. 10.

In support, Plaintiff relies on this Court's prior decision in Case No. 4:16-cv-00511-MW-CAS, Keohane v. Jones, which granted the plaintiff inmate an injunction on the nearly the same issues. Id., p. 10. In Keohane, the district court issued an injunctive order which (1) declared FDC's former freeze-frame policy, Fla. Admin. Code r. 33-602.101, unconstitutional and permanently enjoined FDC from "reenacting and enforcing" it, (2) required FDC to continue to provide the inmate with hormone therapy "so long as it is not medically contra-indicated," and (3) directed FDC to permit the inmate "to socially transition by allowing her access to female clothing and grooming standards." Keohane v. Jones, 328 F. Supp. 3d 1288, 1319 (N.D. Fla. 2018). However, since Plaintiff filed her operative, amended complaint, the Eleventh Circuit Court of Appeals vacated the Keohane order. See Keohane v. Fla. Dep't of Corr., Sec'y., 952 F.3d 1257 (11th Cir. 2020).

## III.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for her motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the

initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of her claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on her complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

<u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing <u>Anderson</u>,

<u>supra</u>).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

<u>Matasushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87

(1986) (footnote omitted). "[T]he mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine

issue of material fact." <u>Anderson</u>, 477 U.S. at 247-48. Finally, "[w]hen

opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion

for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

## IV.   Defendant's Motion for Summary Judgment, ECF No. 49

Defendant asserts that Plaintiff's request to be allowed the same

grooming standards, clothing, and cosmetics as available to female inmates

is now moot. ECF No. 49, p. 2. Defendant argues the same is true of

Plaintiff's claim that Defendant failed to prescribe SRS because of the ban in

FDC Procedure 403.012. Id. Defendant submits evidence that, since July 30, 2019, Plaintiff has been allowed to grow her hair and was provided the means to remove facial and body hair. Id., p. 3; see also ECF No. 27-4. Moreover, the relevant FDC policy was updated in December 2019 and now provides this standard accommodation to all inmates with GD. Id., p. 4; see also ECF No. 49-1. Defendant provided the accommodations to Plaintiff; and because she works in the institution's barbershop, she receives the same access to maintain her preferred grooming, if not more frequently than other inmates, as a result. Id., p. 4. Defendant asserts that aside from being issued two bras and panties, the reason Plaintiff does not have additional clothing and cosmetics is because, just like female inmates, she must purchase those additional items "via an inmate bank account and cannot do so if she lacks the funds." Id., p. 6.

With regard to the sex reassignment surgery, Defendant asserts that there was no, per se, "blanket ban" on surgery. Id., p. 6. Defendant acknowledges an earlier provision in administrative procedure 403.012, which stated:

> Due to the limitations inherent in being incarcerated, a real-life experience for the purpose of gender-reassignment therapy is not feasible for inmates who reside within a correctional facility. However, treatment and accommodations may be provided within the correctional facility to lessen gender dysphoria.

Id. This is now repealed.

Defendant also acknowledges that "real-life experience" is "typically a prerequisite for a physician to consider prescribing SRS" but maintains that the point remains moot because the relevant provision was removed in its entirety from the FDC policy. Id., p. 7. In fact, Defendant argues, the provisions upon which Plaintiff relies is the July 2017 version of the FDC's policy, which has been significantly altered these past three years. Id., p. 13.

Defendant argues that the doctrine of voluntary cessation does not create an exception which would defeat mootness in this case and relies primarily on Keohane. Id., pp. 7-10. Defendant has overhauled their policies on GD, which has been a "lengthy administrative process." Id., p. 11.

Defendant asserts that Plaintiff's claim for deliberate indifference fails because the GDRT made findings specific to Plaintiff, provided certain advisements as to her treatment plan, and determined that "some but not all treatment avenues were applicable to her." Id., p. 17. The treatment plan includes hormone therapy, mental health treatment, and social transitioning accommodations (female undergarments, a medical pass for pat searches and showers, access to additional canteen items, and female grooming standards). Id., pp. 17-18. Furthermore, Plaintiff is already housed at an institution approved to address her GD. Id., p. 18. In short, Plaintiff is

receiving treatment but seeks different or additional types of treatment. Id. Defendant maintains that this difference in medical opinion is insufficient to support Plaintiff's deliberate indifference claim. This is particularly so where Plaintiff provides her own opinion rather than one from a medical professional or medical evidence that the treatment she receives "is causing her psychological distress." Id., p. 19. Defendant asserts the failure to refer Plaintiff for SRS is not a violation of the Eighth Amendment; thus, Plaintiff fails to state a claim.

Lastly, Defendant asserts that Plaintiff is not entitled to injunctive relief because she cannot meet her burden to show that she will suffer irreparable harm as a result of the treatment plan prescribed. Id., pp. 35-36.

## V.   Plaintiff's Response ECF No. 53

In her response, Plaintiff does not challenge that Defendant has permitted her access to hormone therapy, mental health treatment, and social transitioning accommodations. ECF No. 53. Rather, Plaintiff restates her claims as presented in the operative complaint and maintains that the Court should issue a preliminary injunction directing Defendant to provide her with access to a physician who specializes in SRS and to provide her with the surgery, if it is recommended by a qualified provider. Id., p. 24. She argues that there is medical support for her to receive SRS from medical

evaluations she received prior to her incarceration but was unable to afford the $50,000 for the surgery. Id, pp. 3-4. She attempts to shift the burden of proof onto Defendant by arguing Defendant should have presented her pre-incarceration medical records, which date back to 1985. Id. Plaintiff admits Defendant provided her access to an endocrinologist for her condition. Id., p. 7. She does not provide medical records. Plaintiff maintains reliance on Keohane. Id., p. 13.

Plaintiff asserts that the irreparable harm to her is her increased likelihood of suicide due to the "lack of treatment" or if she remains "untreated." Id., p. 20. Plaintiff submitted copies of her grievances seeking a referral to an SRS specialist and the findings of the GDRT, which determined her condition warrants hormonal therapy, female undergarments, alternate canteen items, and female grooming standards. Id., pp. 26-35.

## VI.  Discussion

### A.  The Claim Alleging FDC Policy Violates the Eighth Amendment is Moot.

"Mootness arises when an issue presented in a case is 'no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). The Eleventh Circuit has held that a case must be dismissed as moot "[i]f events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . .

meaningful relief." <u>Al Najjar v. Ashcroft</u>, 273 F.3d 1330, 1336 (11th Cir. 2001). "[D]ismissal is required because mootness is jurisdictional," in that a moot case no longer presents a live "Case[]" or "Controvers[y]" within the meaning of Article III of the Constitution. <u>Id</u>. at 1335-36.

Most relevant to this case, on March 11, 2020, the Eleventh Circuit Court of Appeals issued its decision in <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, the case upon which Plaintiff specifically relies. As to the issue of mootness, the Eleventh Circuit determined that the inmate's claims were moot because the FDC had repealed the policy. <u>Keohane</u>, 952 F.3d at 1267. In short, there was nothing to enjoin. <u>Id</u>. Plaintiff challenges the same policy.

Here, the FDC committed to lengthy administrative proceedings in order to repeal and replace its policies on the treatment of gender dysphoria, and did, in fact, replace its policy, rendering Plaintiff's complaints about the policies moot. <u>See</u> Declaration of Dean Aufderheide explaining the evolution of FDC policy, 403.012. ECF No. 49-3. The policy no longer contains the statement that "a real-life experience for the purpose of gender-reassignment therapy is not feasible for inmates." The policy provides the guidelines for medical appraisal, mental health screening and treatment not limited to hormonal therapy, access to outside consultants for recommendations for treatment and transitioning (though not binding on the

GDRT), provides for specific facilities within the department to provide ongoing treatment and accommodations, and permits social-transitioning accommodations. ECF No. 49-1, pp. 1-7. As the Eleventh Circuit determined, the new policy "properly attends to inmates' individualized medical needs," therefore, "challenge[s] to the old policy are moot." Keohane, 952 F. 3d at 1267. Because the Eleventh Circuit made the determination that challenges to the policy are moot even considering the voluntary cessation exception[7], the report need not discuss the exception.

There is nothing to enjoin here. Likewise, there is no genuine issue of material fact to resolve at trial; thus, summary judgment is warranted. Plaintiff's claim that the FDC policy constitutes an Eighth Amendment violation should be dismissed as moot.

B. Plaintiff's Equal Protection Claim is Unsupported or Otherwise Moot.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment;  and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d

---

[7] The Eleventh Circuit explained the voluntary-cessation exception as "the commonsense concern that a defendant might willingly change its behavior in the hope of avoiding a lawsuit but then, having done so, 'return to [its] old ways.'" Keohane, 952 F.3d at 1267.

1311, 1319 (11th Cir. 2006) (citing Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) and Damiano v. Florida Parole and Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986)).

Plaintiff's equal protection claim necessarily fails first because she has not shown that she was treated differently from other, similarly situated prisoners or that she was treated differently on account of invidious discrimination. Plaintiff admits in her response that FDC has "allow[ed] her the opportunity to fully transition socially," "provided her with some equal treatment allowing her to have bras, panties, female cosmetics and the same hair length," and granted her access to an endocrinologist. ECF No. 53, pp. 2, 7. She maintains only that all of the accommodations made for her are insufficient to satisfy her right to equal protection and only SRS can do so. Her attempt to somehow support a discrimination claim based on the refusal of SRS does not demonstrate that she is being treated differently from others who are similarly situated. First, Plaintiff's own assertions contradict her Equal Protection claim. As discussed above, she alleged there was a "blanket ban" on SRS; therefore, it follows, that no inmate – whether born with male or female physical characteristics and diagnosed with gender dysphoria – could receive SRS as treatment for their condition. Id. Plaintiff quoted the earlier policy: "Due to the limitation inherent in being incarcerated,

a real-life experience for the purpose of gender-reassignment surgery – is not feasible – for inmates who reside within a correctional facility." Id. This policy, now removed, applied to *all* inmates in *any* FDC facility.

Second, to the extent Plaintiff's Equal Protection claims rest on the fact that she was not permitted to maintain a female appearance – grooming standards, underclothing, and cosmetics – the same that are available to female inmates, the claim is moot. ECF No. 6, p. 7. As discussed above, parties agree that, aside from surgery, Plaintiff has been provided with what she needs to maintain a female appearance. More importantly, she presents no evidence to suggest she is treated differently from other similarly situated persons. Accordingly, Plaintiff fails to state a Fourteenth Amendment claim.

C. Plaintiff Fails to State a Claim of Deliberate Indifference to a Serious Medical Need

Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk

of serious harm." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" <u>McElligott v. Foley</u>, 182 F. 3d 1248, 1254 (11th Cir. 1999).

A deliberate-indifference claim contains both an objective and a subjective component. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the need must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." <u>Id</u>. Second, the defendant must have (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. <u>Id</u>. (citing <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999)). Deliberate indifference is the reckless disregard of a substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 835-36.

 "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment (fails to) support a claim of cruel and unusual punishment." <u>Keohane v. Fla. Dep't of Corr., Sec'y</u>, 952 F.3d 1257, 1266 (11th Cir. 2020) citing <u>Harris v. Thigpen</u>,

941 F.2d 1495,1510 (11th Cir. 1991). As articulated in Estelle, "whether . . . additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment" and "[a] medical decision not to order" additional testing, "does not represent cruel and unusual punishment." 429 U.S. at 107.

The Eleventh Circuit has repeatedly addressed GD. In Keohane, there was no Eighth Amendment violation where the prison refused to accommodate the inmate's social transitioning requests because this was a matter of differing medical opinions as to the proper course of treatment and the requests presented serious security concerns. "For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, 'or even very good.'" Keohane, 952 F.3d at 1277 (citing Harris, 941 F.2d at 1510). Courts should not second-guess a medical professional's opinion regarding the propriety of a particular course of treatment. See Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); see also Kothmann v. Rosario, 558 F. App'x 907, 911 (11th Cir. 2014) (recognizing gender identity disorder as a serious medical need).

In Kothmann, the Eleventh Circuit found that the following factual allegations were sufficient to state a claim of deliberate indifference to an inmate's GID condition by the defendant medical professional:

> [that] (1) [i]n the medical community, hormone therapy is the medically recognized, accepted and appropriate treatment for GID; (2) [the medical professional defendant] knew of [the plaintiff's] GID diagnosis, his hormone treatment history, and his medical need for continued hormone treatment; and (3) [the medical professional defendant] knowingly refused to provide [the plaintiff] with his medically necessary hormone therapy for his GID.

558 F. App'x at 911. The Kothmann decision presented at the Rule 12(b)(6) stage. However, the Eleventh Circuit refused to decide whether hormone treatment was medically necessary to treat the prisoner's GID or whether other types of treatment would be adequate. Still, the defendant's failure to provide any treatment to the plaintiff was sufficient to support an Eighth Amendment claim because plaintiff alleged facts sufficient to show that hormone treatment was recognized, accepted, and medically necessary treatment for GID. Id.

Where the inmate has received medical attention and the dispute is over the propriety of that course of treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments made. Harris v. Thigpen, 941 F.2d 1495, 1507 (11th Cir. 1991). Moreover, courts facing the same issue involved in this case have consistently held that the Eighth Amendment does not entitle a prison inmate to a particular type of curative treatment [(i.e., estrogen therapy followed by sex reassignment surgery)], for GD. See Maggert v. Hanks, 131 F.3d 670, 672 (7th Cir. 1997).

Accordingly, if the Eleventh Circuit refused to find hormone treatment or social transitioning accommodations medically necessary in previous cases, then this Court should refrain from making the determination that surgical intervention is necessary in this case, much less one that should be directed by an injunctive order.

The instant case involves Plaintiff's specific request for sex reassignment surgery or a referral to an outside specialist for surgery. Here, it is undisputed that Plaintiff is receiving mental health counseling, hormone therapy, treatment by an endocrinologist, as well as social-transitioning accommodations (female grooming standards, clothing, and cosmetics) for her GD. The only treatment Plaintiff wants and has not yet received is surgery. Although, Plaintiff may strongly disagree with the course of medical treatment prescribed by prison physicians, she cannot demonstrate that the denial of surgery alone amounts to cruel and unusual punishment. There are no genuine issues of material fact which demand a trial in this case.

Plaintiff has been advised by two federal courts that her preferred methods of medical treatment do not support a claim of deliberate indifference to a serious medical need. This Court is not unsympathetic to Plaintiff's medical condition or her claims. But the power of the Court to grant injunctive relief when warranted is not limitless and must yield to binding

precedent.[8] Plaintiff's claim that Defendant violated the Eight Amendment fails and summary judgment in Defendant's favor is warranted.

D. Request for Injunctive Relief

It also bears noting that the even if Plaintiff had sufficiently stated a claim, she is not entitled to the injunctive relief she seeks, which includes housing at a "gender dysphoric site." This Court should be hesitant to interfere with the administrative processes of a prison. "Granting the injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate." Brown v. Anglin, 2016 U.S. Dist. LEXIS 158113, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), report and recommendation adopted sub nom. Brown v. Holland, 2016 U.S. Dist. LEXIS 158110, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016). "[C]ourts are ill-equipped to deal with" the complexities of prison administration. Lawson v. Singletary, 85 F.3d 502 (11th Cir. 1996). Furthermore, it is well-settled that inmates do not have a constitutional right against being transferred to another institution, have no right to incarceration in a prison of their choice, and are not entitled to any prisoner- or status classification. Smith v. Crews, 738 F. App'x 981, 984 (11th Cir. 2018) citing

---

[8] Review of the Keohane case indicates that Keohane filed a petition for rehearing en banc on April 15, 2020. As of August 27, 2020, the petition remains outstanding; and a judge of the Eleventh Circuit has withheld issuance of the mandate.

Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 (1976). In essence, granting certain relief requested by Plaintiff would provide the inmate with the means within which to dictate prison housing assignments. Prison assignments are a function wholly within the discretion of prison authorities. Olim, 461 U.S. at 245. In any event, Defendant claims the point is moot since Plaintiff is assigned to a facility equipped to deal with her GD.

In order for Plaintiff to be entitled to a preliminary injunction, she must show: (1) a substantial likelihood of success on the merits; (2) that the order is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm that the order would cause to the non-movant; and (4) that the order would not be adverse to the public interest. DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011). A preliminary injunction is considered an extraordinary and drastic remedy and, as such, is not granted unless Plaintiff can clearly satisfy the burden of persuasion as to each of the four prerequisites. Id. The purpose of injunctive relief is to maintain the status quo of the parties pending litigation. See Penn v. San Juan Hosp., 528 F.2d 1181, 1185 (10th Cir. 1975). An injunction is not designed to grant Plaintiff the final relief sought if she were to prevail at trial.

In this case, Plaintiff has not shown that she is entitled to a preliminary injunction because she has not shown that she will be successful on the merits and further, for the reasons set forth above, has not shown that such an injunction is necessary to prevent an irreparable harm.

## VII.   Conclusion and Recommendation

It is respectfully RECOMMENDED that Defendant's Motion for Summary Judgment for mootness and failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2), ECF No. 49, be GRANTED; and Plaintiff's request for injunctive relief be DENIED. Finally, it is recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on August 28, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only

and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).